UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAL JAMES HLAVA,<br><br>                Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>                Defendant. | Case No.: 18cv228-WQH-LL<br><br>**REPORT AND RECOMMENDATION RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 19, 25]** |

Plaintiff Hal James Hlava brought this action for judicial review of the Social Security Commissioner's ("Commissioner") denial of his claim for disability insurance benefits. ECF No. 1. Before the Court are Plaintiff's Motion for Summary Judgment [ECF No. 19 ("Pl.'s Mot.")], Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion [ECF No. 25 ("Def.'s Mot.")],[1] and Plaintiff's Reply in support of Motion for Summary Judgment [ECF No. 26 ("Pl.'s Reply")].

---

[1] The content of Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment is the same. ECF No. 25-1. For clarity, the Court will refer to Defendant's cross-motion and opposition as one document, namely, "Def.'s Mot."

This Report and Recommendation is submitted to United States District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Cross-Motion for Summary Judgment be **GRANTED**.

## PROCEDURAL BACKGROUND

On March 14, 2014, Plaintiff filed a Title XVI application for Supplemental Security Income, alleging disability beginning on November 23, 2013.[2] See Administrative Record ("AR") at 152-160. Plaintiff's claim was denied initially on May 21, 2014, and upon reconsideration on December 11, 2014, resulting in Plaintiff's request for an administrative hearing. Id. at 78-81, 88-93. Plaintiff requested the administrative hearing on November 20, 2014. Id. at 85-87.

On May 23, 2016, a hearing was held before Administrative Law Judge ("ALJ") Mark B. Greenberg. Id. at 29-49. Plaintiff, represented by his attorney, David M. Shore, testified at the hearing. Id. An impartial vocational expert ("VE"), Ms. Gloria Lasoff, was also present and testified. Id. at 47-48. At the outset of the hearing, the ALJ asked Plaintiff's attorney, Mr. Shore, whether the record was complete. Id. at 30. Plaintiff's attorney responded that Plaintiff's "medical source statement" had not been completed by his doctor at the Vista Community Clinic. Id. The ALJ agreed to "leave the record open then if necessary for three weeks . . . for the medical source statement [or anything else that Plaintiff wanted to supplement the record with]." Id. at 31-32.

In a written decision dated December 8, 2016, ALJ Mark B. Greenberg determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from February 28, 2014 through the date of the ALJ's decision. Id. at 16-24. Plaintiff requested

---

[2] Defendant's Motion states that the protective filing date for Plaintiff's application is February 28, 2014 [Def.'s Mot. at 2]. However, upon the Court's review of Plaintiff's application, February 28, 2014 appears to be the date that Plaintiff was cleared of having a felony or an attempt to commit a felony. AR 153.

review by the Appeals Council. Id. at 151. In an order dated November 30, 2017, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner. Id. at 1-3.

On January 31, 2018, Plaintiff, represented by his attorney, Lawrence D. Rohlfing, filed the instant action seeking judicial review by the federal district court. See ECF No. 1. On September 17, 2018, Plaintiff filed a Motion for Summary Judgment alleging that "the ALJ err[ed] in failing to consider the later evidence is [sic] assessing current disability." Pl.'s Mot. at 6-8. Plaintiff asserts that "[t]he final decision of the Commissioner lacks the support of substantial evidence and rests upon error of law." Id. at 8. Defendant filed a timely Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment asserting that "[t]he ALJ properly evaluated Plaintiff's residual functional capacity" and that the ALJ's decision is supported by substantial evidence. Def.'s Mot. at 6. Plaintiff replies that "the ALJ fail[ed] to account for evidence of deterioration in assessing residual functional capacity." Pl.'s Reply at 2. Plaintiff further replies that "[t]he Commissioner relie[d] on the absence of a medical source statement contrary to the ALJ finding" and that "residual functional capacity takes all evidence into account, not just the opinion evidence." Id.

## ALJ'S DECISION

On December 8, 2016, the ALJ issued a written decision in which he determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from February 28, 2014[3] through the date of the ALJ's decision. AR at 16-24. The ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant time period (since February 28, 2014, the application date). Id. at 19. The ALJ noted that "the claimant testified he did some work around his roommate's house after the alleged

---

[3] The ALJ noted that February 28, 2014 was the date that "the claimant protectively filed an application for supplemental security income," but based on the Court's review of the administrative record, the claimant filed the application on March 14, 2014. See AR 16, 152-160.

onset date of disability [November 23, 2013]," but "the claimant's earnings from this work did not rise to the level of substantial gainful activity." Id. The ALJ then considered all of Plaintiff's medical impairments and determined that the following impairments were "severe" as defined in the Regulations: "degenerative disc disease and sprain/strain (20 CFR 416.920(c))." Id. The ALJ noted that "[t]he claimant also has nonsevere anxiety, alcoholism, tremor, Hepatitis C, palpitations, hypertension, COPD, and a history of hip fracture." Id. However, the ALJ further noted that "based on the objective medical record and the claimant's testimony it appears these conditions were managed medically, and they should be amenable to proper control by adherence to recommended medical management and medical compliance." Id. Finally, the ALJ noted that "[t]he claimant's medically determinable mental impairments of anxiety and alcoholism, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." Id. At step three, the ALJ found that Plaintiff's medically determinable impairments or combination of impairments did not meet or medically equal the listed impairments. Id. In reaching this decision, the ALJ noted that each impairment did not meet or medically equal the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1. Id.

At step four, the ALJ considered Plaintiff's severe impairments and determined that his residual functional capacity ("RFC") permitted him

> to perform medium work as defined in 20 CFR 416.967(c) except the claimant can lift and/or carry 50 pounds occasionally and 25 pounds frequently; the claimant can sit for 6 hours in an 8-hour workday; the claimant can stand and/or walk for 6 hours in an 8-hour workday; and the claimant can perform frequent postural activity.

Id. at 21. The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Id. at 22. In reaching this

/ / /

4

decision, the ALJ gave significant weight to the State Agency medical examiners. Id. at 22-24. The ALJ found that

> [t]he consistency of the claimant's allegations regarding the severity of his symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record. The positive objective clinical and diagnostic findings since the alleged onset date detailed above do not support more restrictive functional limitations than those assessed herein. . .
>
> In sum, the significant range of medium residual functional capacity assessment is supported by the testimony of the claimant; the claimant's disability reports; and the claimant's treatment records. Specifically, the medium limitation addresses the claimant's impairments and subjective complaints.

Id. at 23, 25.

The ALJ then found that Plaintiff is able to perform his past relevant work ("PRW") as a handyman as it is "actually and generally performed." Id. at 25.

## STANDARD OF REVIEW

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. Id.; see also Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence is "more than a mere scintilla, but may be less than a preponderance." Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted). It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." Id. (citation omitted); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "In determining whether the [ALJ's] findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)

(citations omitted). Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision. See Batson, 359 F.3d at 1193. This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. See Lewis, 236 F.3d at 509.

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. See Batson, 359 F.3d at 1193. Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. Id.

## DISCUSSION

Plaintiff seeks to have his case reviewed and for the Court to enter a decision in his favor. Pl.'s Mot. at 7-8. Plaintiff argues that "the ALJ err[ed] in failing to consider the later [medical] evidence is [sic] assessing [plaintiff's] current disability." Id. at 6. Plaintiff notes that the ALJ found that Plaintiff had "disc disease and sprain/strain," and assessed Plaintiff as having the residual functional capacity to perform a range of medium work with standing/walking limited to six hours in an eight-hour day. Id. Plaintiff argues that although the ALJ gave significant weight to the state agency physicians, the ALJ did not "address the findings, diagnoses, or plans of Dr. Thompson or the physician assistant." Id. at 6. Plaintiff argues that the ALJ "failed to address whether Hlava medically changed by July 2014 and continuing into 2015 and 2016." Id. at 7. Specifically, Plaintiff states that the ALJ credited the findings of Dr. Sabourin, the state agency medical examiner, but ignored the later objective findings of Plaintiff's "slow flexed gait" and "decreased range of motion" which differed from the findings of Dr. Sabourin. Id. In sum, Plaintiff argues that the ALJ's decision lacks substantial evidence because the ALJ "failed to address the objective findings as evidence Hlava lost the ability to perform yard work or mechanical work, indicative of his past work and other activity requiring medium exertion." Id. at 7-8. ///

Defendant contends that substantial evidence supports the ALJ's RFC finding and that "Plaintiff has not specified any evidence to the contrary." Def.'s Mot. at 6. Defendant argues that in making his RFC finding, "the ALJ [took] into account those limitations for which there [was] record support that does not depend on properly rejected evidence and the claimant's subjective complaints." Id. at 7 (internal citations omitted). Defendant argues that here, "there is no opinion of disability from any physician." Id. Defendant further argues that the ALJ "reasonably adopted" Dr. Sabourin's opinion as his RFC finding, as there was no objective evidence of deterioration. Id. Defendant acknowledges that Dr. Thompson indicated that Plaintiff's back pain is aggravated by daily yard work and moving dirt, but that she further noted that Plaintiff's pain is relieved by medication. Id. at 7-8 (citing Warre v. Comm'r of Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Defendant also argues that Plaintiff's activities of daily living (taking care of an elderly friend, performing yard work, plumbing, cooking, and housework) are inconsistent with Plaintiff's allegations of disabling pain. Id. at 9.

Plaintiff reasserts its previous arguments in the Reply that the "ALJ fail[ed] to account for evidence of deterioration in assessing residual functional capacity." Pl.'s Reply at 2. Plaintiff further argues that the "Commissioner misapplies the regulatory standard – residual functional capacity takes all evidence into account, not just the opinion evidence." Id. Plaintiff states that "Hlava had back pain flares every time he tried to do any lifting or previous work such as mechanic work" and needed "hydrocodone for pain" and sometimes "used vodka to combat pain." Id. at 2. Plaintiff further states that Dr. Sabourin examined Hlava in April 2014 and did not find that Plaintiff had these (and other) limitations. Id. at 2-3. Plaintiff argues that the ALJ failed to state specific and legitimate reasons for rejecting the inference of deterioration based on the clinical findings." Id. at 3 (citing Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995)). In sum, Plaintiff argues that the

///

7

"final decision of the Commissioner lacks the support of substantial evidence and rests upon error of law." Id. at 3.

## A. **Treating Physician**

Plaintiff argues that the ALJ did not properly review his case in light of his medical history or consider all of the relevant evidence. Pl.'s Mot. at 6-9. Specifically, Plaintiff appears to argue that the ALJ committed legal error because he "credited the findings of Dr. Sabourin [the state agency's consultative examiner] but failed to address whether Hlava medically changed by July 2014 and continuing into 2015 and 2016." Id. at 7. Specifically, Plaintiff argues that the ALJ did not properly consider the opinion of one of Plaintiff's treating physicians, Dr. Cheryl Thompson, and her physician's assistant. Id. at 6. Plaintiff argues that "[t]he ALJ is obligated to state the weight given to medical opinion evidence." Id. (citing 20 C.F.R. § 416.927(e)(2)(ii)(2016)). Plaintiff states that "[t]he ALJ failed to articulate any reason for rejecting the only reasonable inference that Hlava got worse [after Dr. Sabourin's April 24, 2014 examination]." Id. at 7.

Defendant opposes on the grounds that "[t]here is no opinion evidence of disability from any physician." Def.'s Mot. at 7. Defendant acknowledges that the records indicate that Plaintiff complained of pain on various occasions,[4] but Defendant argues that "[t]he records further demonstrate that Plaintiff complained of pain only when he had run out of medication." Id. at 7-8. Defendant argues that "[t]he Ninth Circuit has long held that

---

[4] Defendant cites and summarizes Plaintiff's treatment records from the following dates:
1. "On July 11, 2014 [Plaintiff] complained of pain when he ran out of medication." [AR 302];
2. "On July 29, 2014, Plaintiff complained of pain when he had been out of medication for 3 days." [AR 296];
3. "On December 5, 2014, Plaintiff alleged pain after raking the yard after he had been out of hydrocodone for 3 months." [AR 342]; and
4. "On September 16, 2015, Dr. Cheryl Thompson indicated that Plaintiff aggravated [sic] his back 'pain is aggravated by daily yard work and moving dirt' (Tr. 319). Dr. Thompson further noted, however, that Plaintiff's 'pain is relieved by pain/RX meds. . . helped with hydrocodone' (Tr. 319; see also Tr. 315-338). Indeed, Plaintiff's primary reason for treatment was for refills of medication (Tr. 319, 323, 331, 338)."
Def.'s Mot. at 7-8.

symptoms, including pain, that are relieved with medication cannot serve as a basis for disability, and that effective medication treatment is a proper basis for finding those complaints inconsistent with the medical evidence." Id. at 8 (internal citations omitted). Defendant argues that notwithstanding Plaintiff's argument that the ALJ ignored evidence of deterioration, "there was no such evidence other than Plaintiff's complaints when he was seeking refills."[5] Id. at 8. Accordingly, Defendant contends that the ALJ's RFC finding was supported by substantial evidence and notes that the opinion of Dr. Sabourin's assessment. Id. at 8-9.

### 1. Relevant Law

The opinion of a treating doctor generally should be given more weight than opinions of doctors who do not treat the claimant. See Turner v. Comm'r. of Soc. Sec., 613 F. 3d 1217, 1222 (9th Cir. 2010) (citing Lester, 81 F.3d at 830-31). If the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Id. (citing Lester, 81 F.3d at 830-31). Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating doctor's opinion only by providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Id. (citing Lester, 81 F.3d at 830-31). This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). "The

---

[5] Defendant cites and summarizes Plaintiff's treatment records from the following dates: (1) "Indeed, Plaintiff made no complaint of back pain in November 2013 when he was arrested (Tr. 251-262, 266-271)"; (2) "He made no complaint of back pain to Dr. Chavira on October 20, 2015 or February 18, 2016 (Tr. 307-308, 346-347)." Def.'s Mot. at 8.

opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record." <u>Townsend v. Colvin</u>, 2013 WL 4501476, *6 (C.D. Cal. Aug. 22, 2013) (quoting <u>Lester</u>, 81 F.3d at 830–31) (citing <u>Morgan</u>, 169 F.3d at 600).

If a treating doctor's opinion is not afforded controlling weight, "the ALJ must consider the 'length of the treatment relationship and the frequency of examination' as well as the 'nature and extent of the treatment relationship' .... In addition, the ALJ must still consider the other relevant factors such as 'the amount of relevant evidence that supports the opinion and the quality of the explanation provided' and 'the consistency of the medical opinion with the record as a whole.'" <u>West v. Colvin</u>, 2015 WL 4935491, at *8 (D. Or. Aug. 18, 2015) (quoting <u>Orn</u>, 495 F.3d at 631; 20 C.F.R. §§ 416.927(c); and 404.1527(c)).

### 2. Relevant Medical History, Findings, And Testimony

On April 14, 2014, Plaintiff had an "orthopedic consultation" performed by Dr. Sabourin, a consultative examiner, as requested by the Department of Social Services. AR 273-278. Dr. Sabourin noted that Plaintiff's "chief complaint" was "[p]ain in the low back for 10 years." <u>Id.</u> at 274. A relevant excerpt from Dr. Sabourin's summary of Plaintiff's history of present illness is set forth below:

> Plaintiff's back goes out episodically and he has to lean to the left with this episodic pain . . . They told him he has some degenerative changes in the mid and low back. He has been given Norco and Valium for his treatment in the past, but he is out of medicines at this time. He complains that he has a sharp and dull pain in the back going up to the mid back and on rare occasions it goes into the left inner thigh. He has a gravity machine. He uses in his backyard which helps when he gets sciatica. . . He has no assistive devices now, but states he has used a cane on occasion for two to three years. . .

<u>Id.</u> Dr. Sabourin performed a physical exam of Plaintiff and found that Plaintiff had normal station and gait, normal cervical spine examination, normal range of motion for his lumbar spine examination, normal range of motion for his extremities (including shoulders, hips,

knees, etc.), and normal neurological examination. Id. at 275-277. Dr. Sabourin's "impression" of Plaintiff was that he had "chronic thoracic and lumbar strain and sprain" and a "history of right proximal femur injury, resolved." Id. at 277. Dr. Sabourin noted that Plaintiff's "severity and duration of his complaints [are] somewhat disproportionate to [his] determinable condition." Id. Dr. Sabourin found that although "he most likely does have some degenerative changes in his back at this point, [] he has no neurological deficit [or] atrophy." Id. Accordingly, Dr. Sabourin opined that Plaintiff could:

> Lift and carry 50 pounds occasionally and 25 pounds frequently. He could stand and walk six hours of an eight-hour workday and sit for six hours of an eight-hour workday. Push and pull limitations are equal to lift and carry limitations. He could climb, stoop, kneel, and crouch frequently. He has no manipulative limitations. He has no need for assistive devices to ambulate.

Id.

On May 8, 2014, Dr. Spinka conducted a Disability Determination Explanation for Plaintiff. Id. at 54-58. Dr. Spinka noted that he reviewed plaintiff's medical records, including the orthopedic consultative examination [of Dr. Sabourin] and that the "MSS for medium is consistent with the findings and is given significant weight." Id. at 54, 57. Dr. Spinka found that Plaintiff had a spine disorder and that he found Plaintiff to be "partially credible." Id. at 56. Dr. Spinka noted that Plaintiff has the "ability [sic] to stand, walk, and move about satisfactorily." Id. Dr. Spinka made the same RFC determination for Plaintiff as Dr. Sabourin. Id. at 57. On September 25, 2014, upon reconsideration Dr. DeSouza found that Plaintiff is able "to perform medium work" and affirmed Dr. Spinka's findings, including his RFC determination. Id. at 66-72.

On July 11, 2014, Plaintiff saw Dr. Cheryl Thompson for "follow up of E/R and back pain." Id. at 302. Dr. Thompson noted that Plaintiff presented in the emergency room because he was "sick, developed low back discomfort (has DDD), then returned home after ED visit 1 mo ago." Id. Dr. Thompson noted that Plaintiff had "Norco from ED [which] helped with back pain. Just ran out." Id. Dr. Thompson further noted that Plaintiff said he was advised to "come here to get 'on pain mgmt.'" Id. Dr. Thompson completed a physical

exam of Plaintiff and found that he had "posterior tenderness" on his back/spine. <u>Id.</u> at 303. She also noted in a section about Plaintiff's musculoskeletal physical exam that his "lumbar spine – muscle spasm, Range of motion; moderate pain w/motion." <u>Id.</u> Dr. Thompson's assessment of Plaintiff was that he had "degenerative disc disease" and she noted that "patient may get relief of pain with gabapentin. Will address after records obtained if pt continues with me." <u>Id.</u> at 304.

On July 29, 2014, Plaintiff saw Dr. Thompson for "follow up to discuss test results and back pain." <u>Id.</u> at 296-299. Regarding Plaintiff's back pain, Dr. Thompson noted that Plaintiff had lower back pain and that "[t]he patient describe[d] the pain as an ache, sharp and throbbing." <u>Id.</u> at 296. Dr. Thompson further noted that "[i]n past wk, pain was worse, but better today. Has taken 25 of hydrocodone tabs 1 Rx'd 18d ago. None in past 3d. . . . More comfortable in flexed trunk position." <u>Id.</u> Plaintiff was noted to take as directed "Norco" 1 tablet "daily as needed for pain." <u>Id.</u> at 297. Dr. Thompson's assessment of Plaintiff was that he had "degenerative disc disease" and she noted that she "suspect[ed] spinal stenosis due to prefers flexed position." <u>Id.</u> at 298. Dr. Thompson noted that she will order x-rays if she does not receive them from Scripps from the last year. <u>Id.</u> Dr. Thompson noted that she would like to schedule a follow-up visit for Plaintiff "within 6 weeks." <u>Id.</u> at 301.

On December 5, 2014, Plaintiff saw Dr. Thompson for a follow-up visit. <u>Id.</u> at 342-345. Plaintiff's note indicates that he was "applying for SSD as back pain flares every time tries to do any lifting or previous work as is mechanic by trade. If rakes yard, develops more pain. Since ran out of hydrocodone 3 mos ago, finds Vodka in coffee in AM helps to get moving for the day." <u>Id.</u> at 342. Plaintiff was still taking as directed Norco as needed for pain. <u>Id.</u> at 343. Dr. Thompson conducted a physical exam and noted for Plaintiff's "back/spine" as follows: "lateral –Lumbar curvature: Mobility decreased. Posterior tenderness – Palpation: Lumbar: Bilateral, From: L1, To: L5. Rotation – SLR: extended/sitting: Positive/Left." <u>Id.</u> at 343-345. Dr. Thompson noted for Plaintiff's musculoskeletal system that his "gait- [was] slow, flexed trunk." <u>Id.</u> at 344. Dr. Thompson

assessed Plaintiff with degenerative disc disease and noted that she will order an x-ray when financially feasible for Plaintiff. <u>Id.</u> She also noted that Plaintiff may benefit from gabapentin, but is prohibited by his finances. <u>Id.</u> She prescribed Plaintiff Norco as needed for pain. <u>Id.</u> at 344. Dr. Thompson scheduled a follow-up visit for Plaintiff "within 1 month." <u>Id.</u> at 345.

On January 19, 2015, Plaintiff saw Twanna D. Davis-Arnold, N.P., who works in Dr. Thompson's clinic, for a follow-up visit for "chronic pain." <u>Id.</u> at 338-341. Plaintiff's note indicates that his "symptoms began 1 day ago and generally lasts 1 day. The symptoms are reported as being severe. The symptoms occur constantly. The location is back. Aggravating factors include Movement, lifting, prolonged standing or activity. Relieving factors include pain medications." <u>Id.</u> at 338. Plaintiff's prescription for Narco as needed for pain was refilled. <u>Id.</u> Ms. Davis-Arnold, N.P., noted that Plaintiff was "positive" for back pain and Plaintiff was advised to "avoid heavy lifting; alternate ice and moist warm heat to area; daily stretching exercises TID as demonstrated; medications as prescribed . . . ." <u>Id.</u> at 339-340. Plaintiff's neurological exam also indicated that he had "dizziness, extremity weakness, gait disturbance, headache, memory impairment, numbness in extremity, seizures and tremors." <u>Id.</u> at 339.

On March 23, 2015, Plaintiff saw a Cynthia Clark, N.P., who works in Dr. Thompson's clinic, for his chronic back pain. <u>Id.</u> at 331-334. Plaintiff's note states that upon physical exam, his musculoskeletal and neurological exams were "normal." <u>Id.</u> at 333. Plaintiff had a "new onset" of elevated blood pressure and was prescribed medications for that. <u>Id.</u> Ms. Clark, N.P., noted that Plaintiff's degenerative disc disease continued, but was "controlled on 1 pill/day." <u>Id.</u> On June 3, 2015, Plaintiff saw Dr. Joseph Brown, from the same clinic as Dr. Thompson, for potential "syphilis exposure." <u>Id.</u> at 327-330. Plaintiff was prescribed medication for his chief complaint, but upon examination, Dr. Brown also noted that Plaintiff was "positive" for back pain. <u>Id.</u> at 328. Also, upon his musculoskeletal exam, Plaintiff had tenderness in his lumbar spine. <u>Id.</u> at 329. On August 20, 2015, Plaintiff saw Dr. Michael Cutler, from the same clinic as

Dr. Thompson, for a thumb injury, pain medications, alcohol binge and heart palpitations. Id. at 323-326. Dr. Thompson assessed Plaintiff with "chronic pain syndrome." Id. at 325. Dr. Thompson refilled Plaintiff's Norco prescription for pain as needed. Id. On September 16, 2015, Plaintiff saw Dr. Thompson for musculoskeletal pain. Id. at 319-322. Dr. Thompson noted that Plaintiff's "pain is aggravated by daily yard work and moving dirt." Id. at 319. However, Dr. Thompson further noted that "[th]e pain is relieved by pain/RX meds. Additional information: has multiple areas of pain and stiffness that is helped with hydrocodone." Id. Plaintiff's physical exam notes indicate for his "back/spine" exam as follows: "posterior tenderness – Palpation: Lumbar: Bilateral, From L3, To: S1." Id. at 320. Plaintiff's assessment was still Lumbar degenerative disc disease, but Plaintiff was advised to "minimize use of hydrocodone due to risk of addiction." Id. Dr. Thompson refilled Plaintiff's Norco prescription for pain as needed. Id. at 321.

On October 16, 2015, Plaintiff saw Dr. Thompson for tremors and back pain. Id. at 315-322. Regarding his back pain, Dr. Thompson's note indicates that "it occurs persistently. Location of pain is lower back. Additional information: c/o continued low back pain which is making it hard for him to ambulate short distances. Hydrocodone helps to relieve pain to be able to get to appts, shower, dress." Id. at 315. Dr. Thompson refilled Plaintiff's Norco prescription for pain as needed. Id. at 318.

On March 4, 2016, Plaintiff saw Dr. Shelese Newmark, from the same clinic as Dr. Thompson, for a follow-up appointment from an emergency room visit for coughing up blood. Id. at 311. Plaintiff's note indicates that he "experienced some palpitations so he is currently scheduled to see a cardiologist at Scripps." Id. Plaintiff's physical exam notes do not indicate that his back was examined, as multiple other systems are noted, but not his back or musculoskeletal. Id. at 313.

On May 23, 2016, Plaintiff testified at the hearing held before ALJ Greenberg that his previous work was as a handyman until October 2013. Id. at 33-34. Plaintiff testified that he had been living with and taking care of old man until he passed away on "the tenth of last month." Id. The ALJ asked Plaintiff whether that meant that he "still worked and

had wages up until last month." Id. Plaintiff answered that he did not work for wages for the man, but rather that "he let [him] stay there and [he] just did things around the house for him because he was 86 years old. . ." Id. Plaintiff further testified that he "was there with him to . . . help[] him with stuff." Id. When the ALJ asked Plaintiff about his previous work as a handyman, until October 2013, Plaintiff testified that he "just can't do it no more. . . but it's just, [he] wake[s] up and [he] hurts so bad that, from it in the morning, I can't, I just can't do it anymore." Id. Plaintiff testified that he earned about $1,000.00 per month as a handyman from 2001 through 2013. Id. at 34. He worked approximately five hours a day five days a week, at a rate of $10.00 per hour. Id. Plaintiff testified that he used to do work on "cars, house repair, yard work, digging, roof work." Id. Plaintiff further testified that "you know, I've just been, my back has just been getting progressively worse, and fast." Id. Once he started taking care of the old man that he lived with, Plaintiff testified that he did the following things to help out around the house: mowed the lawn, light plumbing, cleaned the house, did the dishes, cooked for him, and yard work. Id. at 35. Plaintiff said that he used to mow the lawn using a "push mower," but "it was too much for [him]." Id. He said he "got a riding lawn mower now [he] can sit on and [he], ride[s] the lawn mower to cut the lawn so it's not so bad now." Id. The ALJ asked Plaintiff whether he did any kind of yard work beside mowing. Id. Plaintiff said he "trimmed up the brush once in a while from the, off the side by the roof where the solar panels are, picked up the leaves." Id. The ALJ asked Plaintiff "what would keep you from being a handyman again?" Plaintiff said that he just cannot do it because if he "lift[s] something or do[es] some twisting and the next day [he] can't move." Id. at 36. Plaintiff testified that the day after he does any lifting he is:

> awake by the morning and it, and it takes me three hours before [he] can move again because [] you know, my back, it's all screwed up. . . . and it's not just not just in the lower back, it's in the, I have a disc or something in the middle of my back that's a mess too. And it's just getting progressively worse fast. And I don't, I don't, you know, I'm going to have to, I don't know what I'm going to have to do. I don't know if they can operate on something like that and fix it or not.

Id.

The ALJ asked Plaintiff what his doctors have told him, and Plaintiff responded that "they want to put [him] on pain medication all the time, and [he] do[esn't] want to take pain medication because [he] doesn't want to get addicted to something." Id. The ALJ asked Plaintiff whether there is a limit to how much he can lift. Id. at 37. Plaintiff responded that the problem is actually with his limited ability to sit and stand. Id. The ALJ asked Plaintiff about the note in his medical records from "last September from [his] visit at Vista Clinic" indicating that Plaintiff's "pain was aggravated by daily yard work and moving dirt," but was "relieved by pain medications." Id. Plaintiff stated that the yard work involved raking and picking up cigarette butts and wrappers, but that "[he] do[esn't] even bend over to do that anymore" and "use[s] one of them hand grip things now." Id. The ALJ asked Plaintiff if he had any "MRIs, CT scans, x-ray[s]." Id. Plaintiff stated that he had a chest x-ray, which he said "indicated thoracic and lumbar degenerative osteophytes." Id.

Plaintiff's attorney then asked Plaintiff about whether he was comfortable when he was sitting and/or standing, and Plaintiff stated that when he sits he has to "keep changing [his] positions" because he "ha[s] a lot of pain when [he], when [he] just sit[s] in one spot." Id. at 39. Plaintiff further testified that when he stands he is more comfortable moving around because his "sciatic nerve gets hurting real bad in the back of [his left] leg." Id. Plaintiff further testified that if he stands in one place he is comfortable standing in one spot for "no more than 15, 20 minutes maybe," but if he is moving around he can stand for "an hour or two." Id. at 40. Plaintiff's attorney asked him whether there are some activities he could do "where [he] would not be hurting the next day." Id. Plaintiff initially responded that he "really do[esn't] know anymore," but eventually stated that he "can do dishes" and "sweep the floor." Id. at 40-41. Plaintiff's attorney asked him about how long Plaintiff spent outside doing things in the yard (mowing, raking, picking up cigarette butts), and Plaintiff responded "[m]aybe an hour or two." Id. at 41-42. Plaintiff stated that he spent the rest of his taking care of the elderly man he lived with. Id. Plaintiff further testified that although he used to get on his computer, he "can't do that anymore either because [he]

can't sit long enough." Id. at 42. Plaintiff's attorney also asked him about his history and alcohol use and abuse and specifically what his "current situation" is. Id. Plaintiff responded that since his elderly friend died, he had been drinking "probably too much." Id. Plaintiff further confirmed that he is on a muscle relaxant for his back and his legs. Id.

The vocational expert, Ms. Lasoff, testified that Plaintiff's past work would be classified as a "handyman, 869.381-010, medium, SVP: 7." Id. at 47. The ALJ asked the vocational expert whether Plaintiff's past work would be available to a hypothetical "individual of advanced age with a GED" who was "limited to medium work with frequent postural activities." Id. The vocational expert testified "Yes." Id. at 48. The ALJ posed another hypothetical of whether past work as a handyman would be available if he added a "sit/stand option." Id. The vocational expert testified "No." Id.

### 3. ALJ's Considerations

In reaching his decision, the ALJ summarized Plaintiff's testimony from the hearing and also a relevant summary of the objective medical evidence between November 27, 2013 through March 2, 2016. AR 20-22. The ALJ gave "great weight to the findings of the consultative examiner, Thomas Sabourin, M.D." who determined that "the claimant was able to perform medium work capacity despite having a history of right proximal femur injury, resolved, and chronic thoracic and lumbar strain, sprain." AR at 23. The ALJ noted that "[u]pon physical exam, the claimant had tenderness in the mid-thoracic and lower lumbar area, but he had an otherwise intact examination." Id. The ALJ found that "[t]he findings of Dr. Sabourin are fully consistent with the objective record of evidence." Id. Similarly, the ALJ gave "significant weight to the concurring findings of State agency reviewers, G. Spinka, M.D., and L. DeSouza, M.D., who reviewed the record and determined the claimant was able to perform a range of medium work capacity and frequent postural activity." Id.

/ / /

/ / /

/ / /

4.    Analysis

As discussed below, Plaintiff's argument that ALJ "did not otherwise address the findings, diagnoses, or plans of Dr. Thompson or the physician assistant" is without merit. Pl.'s Mot. at 6. Similarly, Plaintiff's argument that the "ALJ credited the findings of Dr. Sabourin but failed to address whether Hlava medically changed by July 2014 and continuing into 2015 and 2016" is also unfounded. Id.   As an initial matter, the ALJ considered and specifically cited Dr. Thompson's treatment records in his opinion. See, e.g., AR 21-22 (citing exhibits 5F and 7F summarizing Plaintiff's July 29, 2014 and December 5, 2014 appointments with Dr. Thompson and his January 19, 2015 appointment with her nurse practitioner, Twanna, D. Davis-Arnold). Accordingly, Plaintiff's argument that the ALJ did not address the findings of Dr. Thompson or the physician assistant is inaccurate.

Additionally, the Court finds that Dr. Thompson and/or her nurse practitioner's records do not directly contradict Dr. Sabourin's findings that Plaintiff is able to do "medium work capacity despite having a history of right proximal femur injury, resolved, and chronic thoracic and lumbar strain, sprain." See, e.g., AR 338. For example, the ALJ noted in his opinion that on January 19, 2015, the record indicates that Plaintiff was positive for back pain, and the ALJ further found that Plaintiff's treatment plan was "limited to alternating ice and heat, pain medication, and a recommendation to avoid heavy lifting." AR 22.  This is consistent with Dr. Thompson's note in her January 19, 2015 treatment record that "[r]elieving factors [for Plaintiff's back pain] include Pain medications." Id. at 338. Similarly, Plaintiff's argument that the ALJ ignored the findings of Plaintiff's "slow flexed gait" and "decreased range of motion" is unfounded because the ALJ cited findings from that medical record dated December 5, 2014 in his opinion. See Pl.'s Mot. at 7; AR 23 (citing 7F, p. 32). Specifically, the ALJ noted that the treatment record "indicated the claimant complained about having back pain after raking the yard. . . He ran out of Hydrocodone three months earlier and used vodka in coffee to help him get moving for the day." AR 23. Although the ALJ did not quote the excerpt that Plaintiff cites in his

motion about "slow flexed gait" and "decreased range of motion" it is inaccurate to say that the ALJ ignored these findings.

The Court also finds that the ALJ considered and addressed Plaintiff's medical treatment records from 2014 through 2016, and cited some of them in his opinion. See, e.g., AR 23 (citing 7F, p. 32; 7F, pp. 28-31; 7F, pp. 41-42; 6F, pp. 1-3; 7F, p. 44; 6F, p. 4). Upon the Court's own review of Plaintiff's treatment records from this time period, the Court finds that none of them contradict Dr. Sabourin's findings that Plaintiff is able to do "medium work capacity." For example, Plaintiff's treatment record from December 27, 2015 was for Plaintiff's "chief complaint" of "alcohol detox." AR 351. The record contains nothing in contradiction of Dr. Sabourin's findings and significantly notes that Plaintiff had "no muscle pain." Id. Similarly, Plaintiff's record from February 18, 2016 was for a follow-up appointment for his "chronic cardiac conditions" and contains no indication that Plaintiff's back pain worsened. Id. at 307. The record includes a "review of [Plaintiff's] symptoms" for his musculoskeletal system it states that "No bone or joint pain that limits daily activity." Id.

### 5. Additional Considerations by the ALJ

In this case, the ALJ not only relied on objective medical evidence to support his findings, but also properly considered Plaintiff's treatment history. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." Warre, 439 F.3d at 1006; 20 C.F.R. § 404.1529(c)(3)(iv) ("An ALJ may consider, among other things, the effectiveness and side effects of any medication a claimant takes or has taken in evaluating the intensity and persistence of symptoms, such as pain, and in determining the extent to which symptoms limit a claimant's capacity for work"). The ALJ noted in multiple instances throughout his opinion that Plaintiff's treatment plan was managed by pain medication and also noted during the hearing that one of Plaintiff's treatment records indicates that "Pain was relieved by pain medications." AR 37; see also id. at 20-23. The record reveals that Plaintiff's symptoms of back pain were controlled when he took his prescribed pain medication.

The ALJ also considered Plaintiff's activities of daily living in making his decision. Specifically, the ALJ found that notwithstanding Plaintiff's allegations of disability, Plaintiff's daily activities "undermine the consistency of his allegations of disabling functional limitations." <u>Id.</u> at 21. The ALJ noted that:

> the claimant testified for the last 17 years he helped his elderly roommate, in exchange for rent, until the roommate passed away in February of 2016. The claimant was able to do various chores around the house, such a mow the lawn with a ride-on mower, light plumbing, house cleaning, dishwashing, pick up leaves, trim bushes, cook meals, and oversee other people living at the house.

<u>Id.</u> at 22 (internal citations omitted).

In considering plaintiff's daily activity testimony, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." <u>Garrison v. Colvin</u>, 759 F.3d 1016 (9th Cir. 2014). However:

> [w]hile a claimant need not 'vegetate in a dark room' in order to be eligible for benefits, <u>Cooper v. Bowen</u>, 815 F.2d 557, 561 (9th Cir. 1987) (quoting <u>Smith v. Califano</u>, 637 F.2d 968, 971 (3d Cir. 1981)), the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are *transferable to a work setting*, <u>see</u> <u>Morgan v. Comm'r Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999); <u>Fair</u>, 885 F.2d at 603. Even those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they *contradict* claims of a totally debilitating impairment. *See* <u>Turner v. Comm'r of Soc. Sec.</u>, 613 F.3d 1217, 1225 (9th Cir. 2010); <u>Valentine v. Comm'r Soc. Sec. Admin.</u>*,* 574 F.3d 685, 693 (9th Cir. 2009).

<u>Molina v. Astrue</u>, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (emphasis added). Here, the ALJ specifically noted that plaintiff's testimony regarding his daily activities was inconsistent with disabling functional limitations, and thus contradicted his pain and symptom testimony. AR 20-21. Further, the ALJ concluded that "some of the physical and mental abilities and social interactions required in order to perform these activities are the

same as those necessary for obtaining and maintain employment." <u>Id.</u> at 21. The Ninth Circuit has provided that "[i]f, despite [his] claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002) (upholding ALJ's negative credibility determination where claimant's testimony was at odds with her ability "to perform various household chores such as cooking, laundry, washing dishes, and shopping"). The Court finds the ALJ was justified in considering plaintiff's daily activity in discounting his pain testimony.

### 6. <u>Conclusion</u>

In sum, for the reasons stated above, the ALJ properly assessed Plaintiff's residual functional capacity based on the evidence in the record. Additionally, the ALJ properly found Plaintiff's subjective pain and symptom testimony to be not entirely consistent with the medical evidence and other evidence in the record because he provided specific, clear and convincing reasons supported by substantial evidence in making his determination.

Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion be **GRANTED**.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## **CONCLUSION**

For the reasons set forth above, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Cross-Motion for Summary Judgment be **GRANTED**.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **July 3, 2019**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 10, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: June 21, 2019

_____
Honorable Linda Lopez
United States Magistrate Judge

18cv228-WQH-LL